IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 07-cv-01293-LTB

GRAZIA ANTONELLA BOCCIOLONE, and
DAVID WAYNE BRENMAN,

    Plaintiffs,

v.

JAY H. SOLOWSKY,
PERTNOY, SOLOWSKY & ALLEN, P.A., and
EDWARD M. REIZEN,

    Defendants.
_____

**ORDER**
_____

    This fraud case is before me on Defendants, Jay H. Solowsky and Pertnoy, Solowsky & Allen, P.A.'s, Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue [**Docket # 13**], Plaintiffs' Response [**Docket # 18**], and Defendants' Reply [**Docket # 28**]. Oral argument would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I GRANT Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [**Docket # 13**].

### I. BACKGROUND

    This is a fraud and embezzlement case arising under the RICO statute, 18 U.S.C. § 1965. Defendants Jay H. Solowsky ("Solowsky") and Pertnoy, Solowsky & Allen, P.A. ("Pertnoy")—attorneys for Defendant Reizen—are charged with assisting Reizen in defrauding

1

Plaintiffs of somewhere between $700,000 and $20 million by means of an investment Ponzi scheme and with making false and malicious assertions against Plaintiffs that resulted in economic losses and other miscellaneous strife.

The alleged facts are substantially the following. Plaintiff Bocciolone is a member of the Bocciolone family who together own Sitindustrie—a parent company that manages a number of subsidiary companies also owned by the Bocciolone family. Plaintiff Bocciolone, with the advice of her husband, Plaintiff Brenman, entered into a plan to invest some $20 million dollars belonging to an investment entity—Tambourine—that was created to invest the monies of the Bocciolone family. Brenman was a director of Tambourine. Brenman invested the $20 million with Lionheart, an investment company. Unsatisfied with Lionheart's results, Brenman sought return of the investment several months later. Lionheart returned $10 million.

Defendant Reizen was an investment manager. He joined the Board of Directors of Hawksbay, another investment entity owned by the Bocciolone family. At Reizen's suggestion, Tambourine transferred the $10 million returned from Lionheart to Hawksbay.

Reizen represented to Hawksbay that he had invested the $10 million in a investment pool used to purchase debt instruments issued by banking institutions and that Bland Payne Holdings would serve as administrator for the different investors. Reizen falsely told Plaintiffs that the Hawksbay investments were being sequestered by the Office of Foreign Asset Control at the United States Treasury and told Plaintiffs to pay additional money—in excess of $700,000—to Bland Payne to facilitate the release of the funds.

Reizen recommended Defendants Solowsky and Pertnoy be retained to assist Tambourine in recovering the money still outstanding from Lionheart. After Solowsky sent letters to

Lionheart, Lionheart transferred additional funds back to Plaintiffs. Reizen represented to Plaintiffs that he would be billed directly for Solowsky and Pertnoy's efforts. Unbeknownst to Plaintiffs, Solowsky and Pertnoy were also representing Reizen in a fraud lawsuit brought by Power Trading International ("PTI"), a corporation unrelated to Plaintiffs. Plaintiffs allege Defendants used the Hawksbay money and the $700,000 to pay the settlement in the PTI case—as well as to pay themselves—by transferring the monies to Solowsky and Pertnoy's trust account.

Concerned with the missing funds, the remaining Bocciolone family members employed Solowsky to pursue allegations of theft and embezzlement against Plaintiffs. Solowsky first demanded—and was paid—$8,100.00 that he claimed he was still owed for the Lionheart/Tambourine letters. Solowsky then allegedly drafted letters and memoranda ("Solowsky letters" or "Solowsky memoranda") regarding the missing Hawksbay and Lionheart funds that intimated Plaintiffs had stolen the funds. Solowsky told the remaining family members that several million dollars of the Hawksbay funds—which in fact had been used to pay the PTI settlement—had been used to pay Plaintiff Brenman's creditors. As a result of these letters, the remaining Bocciolone family members ousted Plaintiff Grazia Bocciolone from the family businesses and initiated various legal actions against her that froze her familial assets. The Solowsky memoranda have been used as exhibits in these actions.

Plaintiffs also allege Solowsky—while holding the remaining Hawksbay funds less the PTI settlement in the trust account—suggested to Sitindustrie that he would be able to initiate a settlement with Plaintiffs for the return of these "missing" funds. Solowsky stated to Sitindustrie that Reizen had information that would facilitate Sitindustrie in recovering these funds from

3

Plaintiffs but that he would only assist in recovering these funds if Sitindustrie indemnified Reizen from any liability arising from claims brought by Plaintiffs, Tambourine, or Hawksbay. Solowsky then transferred the funds into a different trust account at a different bank.

Plaintiffs brought the present suit alleging nine claims for relief: (1) Defendants engaged in a series of schemes—using the mails, wires, and other avenues of interstate commerce—to defraud Plaintiffs in violation of RICO; (2) Defendants conspired amongst themselves and others to steal money from Plaintiffs and to implicate Plaintiffs in the theft; (3) Defendants converted Plaintiffs monies for their own use; (4) Solowsky and Pertnoy committed slander *per se* by publishing statements that implied Plaintiffs had committed crimes; (5) tortious interference with economic advantage; (6) breach of fiduciary duty against Reizen; (7) aiding and abetting breaches of fiduciary duty against Solowsky and Pertnoy; (8) fraud against Reizen; and (9) fraudulent concealment against Reizen.

Solowsky and Pertnoy filed the present motion requesting I dismiss the claims against them for lack of personal jurisdiction and venue. Solowsky is a resident of Florida and Pertnoy is a Florida law firm with its principal place of business in Florida. Neither have ever had an address, phone number, bank account, or property in Colorado. Neither have ever advertised nor solicited business with clients in Colorado. In addition, the remaining Bocciolone family members—as well as companies owned by the Bocciolone family including Tambourine and Hawksbay—have already filed a suit in the United States District Court for the Southern District of Florida against Solowsky and Pertnoy based on many of the same allegations. A separate case against Reizen is also pending in that forum.

## II.  STANDARD OF REVIEW

Plaintiffs bear the burden of establishing personal jurisdiction over Pertnoy and Solowsky. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Plaintiffs satisfy this burden by making a prima facie showing of jurisdiction. *Id*. Plaintiffs may make this prima facie showing by demonstrating—via affidavit or other written materials—facts that, if true, would support jurisdiction. *Id*. I must resolve all disputed facts and draw all reasonable inferences in Plaintiff's favor. *Encore Prods., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1114 (D. Colo. 1999). While the burden on Plaintiffs is light, mere conclusory allegations are insufficient. *Id*.

Plaintiffs concede this Court does not have general jurisdiction over Solowsky and Pertnoy. Thus, this case rests upon a specific jurisdiction analysis.

## III.  ANALYSIS

Plaintiffs' complaint invokes federal question jurisdiction under RICO. Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and whether the exercise of jurisdiction comports with due process. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000).

Where Congress has statutorily authorized national service of process, such service establishes personal jurisdiction, provided that the federal court's exercise of jurisdiction comports with Fifth Amendment due process. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006). The civil RICO statute, when raised in a proper venue, extends personal jurisdiction into any judicial district of the United States when necessary to satisfy the ends of

justice. *Id*. (citing 18 U.S.C. § 1965(b)). Venue is only proper in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant. *Id*. at 1230 (citing *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)).

In order to establish personal jurisdiction over Solowsky and Pertnoy, Plaintiffs must establish personal jurisdiction over at least one of the three Defendants. As the RICO statute does not establish personal jurisdiction over Solowsky and Pertnoy in and of itself, *see id.* at 1233, Plaintiffs must rely on the Colorado long-arm statute or, in the alternative, rely on RICO's nationwide service of process based upon personal jurisdiction over Reizen. COLO. REV. STAT. § 13-1-124; 18 U.S.C. § 1965(b). Plaintiffs argue I should apply the Colorado long-arm statute here because Defendants engaged in the commission of a tortious act in Colorado. COLO. REV. STAT. § 13-1-124(1)(b). If this ground is met, I then inquire whether the exercise of jurisdiction in this case comports with due process.

### 1. Defendants Solowsky and Pertnoy

Under § 13-1-124(1)(b), Colorado's long-arm statute reaches both tortious conduct occurring in Colorado and tortious conduct occurring outside of Colorado that nonetheless results in injury in Colorado. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1507 (10th Cir. 1995). Where the tortious acts were committed in another state, the long-arm statute will not reach the injury-causing conduct unless the injury in Colorado is direct, not consequential or remote. *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1255 (D. Colo. 2000). The fact that a Plaintiff suffers some indirect economic consequences is insufficient. *Id*.

Plaintiffs do not sufficiently allege tortious conduct by Solowsky and Pertnoy causing an injury in Colorado. Plaintiffs' primary contentions against Pertnoy and Solowsky involve the

6

transfer and misuse of funds belonging to Tambourine and Hawksbay—parties that have already initiated suit in the Southern District of Florida for their claims arising out of Defendants' actions. Plaintiffs allege the Tambourine and Hawksbay funds were the property of the Bocciolone family, and do not allege any injury accruing to Plaintiff Brenman from the misuse of these funds. Plaintiff Bocciolone—by her own admission—was ousted from these Bocciolone family enterprises in 2001. Plaintiff Bocciolone—again by her own admission—did not become a Colorado resident until early 2003, some two years later. Any lingering injury from the pre-2001 acts of Defendants that Plaintiff Bocciolone could have suffered after moving to Colorado is too consequential and remote to be considered sufficiently direct so as to allow for application of the Colorado long-arm statute. *See Wenz*, *supra*, 55 F.3d at 1508.

Plaintiffs' claims regarding transfers to Bland Payne are also insufficient to invoke Colorado's long-arm jurisdiction. Plaintiffs do not allege that Bland Payne is a Colorado bank, only that the bank from which the funds were drawn was a Colorado bank. "With respect to checks and wire transfers, the fact that checks are drawn on a Colorado bank account is not sufficient to show harm in Colorado, when, as here, the checks are cashed in another state." *Int'l Beauty Prods., LLC v. Beveridge*, 402 F. Supp. 2d 1261, 1275 (D. Colo. 2005).

Plaintiffs' charges relating to the Solowsky letters are also unavailing. It is undisputed that the letters were drafted in Florida and sent to Bocciolone family attorneys in New York. For the purposes of a jurisdictional analysis, the injuries alleged—that these letters formed the basis of the remaining Bocciolone family members' suspicions of Plaintiffs' fraud—occurred where the letters were published and distributed and where the remaining Bocciolone family members resided, not where Plaintiffs resided. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770,

7

777 (1984) ("The tort of libel is generally held to occur wherever the offending material is circulated."); *Madara v. Hall*, 916 F.2d 1510, 1515 (11th Cir. 1990); *see also* RESTATEMENT (SECOND) OF TORTS § 577A.

When "both the tortious conduct and the injury occur in another state, the fact that plaintiff resides in Colorado and experiences some economic consequences here is insufficient to confer jurisdiction on a Colorado court." *Wenz, supra*, 55 F.3 at 1508 (citing *McAvoy v. District Court*, 757 P.2d 633 (Colo. 1988)). Plaintiffs nevertheless argue I should consider their defamation claims in light of the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984). The Colorado Supreme Court—applying *Calder* to the Colorado long-arm statute—recently clarified the ruling's applicability to Colorado proceedings. *See Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1200 (Colo. 2005). Under *Archangel Diamond*, the out-of-state actions of out-of-state actors cannot form the basis for an exercise of Colorado's long-arm statute unless the actions are expressly aimed at Colorado and Colorado is the focal point of the tort and its injury. *Id*. (citing *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995)). As Plaintiff's Complaint clearly alleges, Solowsky drafted these letters in an effort to conceal Defendants' participation in a scheme to defraud Tambourine and Hawksbay at a time when Plaintiffs were no longer involved in either enterprise. Thus, it cannot be argued that the purpose of the letters was "expressly aimed" at Colorado or that Colorado was the "focal point" of the letters. Any damage to Plaintiffs was an indirect consequence too remote to allow for application of the Colorado long-arm statute. *See Wenz, supra*, 55 F.3d at 1508.

### 2. Defendant Reizen

Although Colorado's long-arm statute does not extend jurisdiction to Solowsky and

Pertnoy, Plaintiffs nonetheless argue jurisdiction over Solowsky and Pertnoy under RICO is proper because Colorado's long-arm statute applies to Reizen. This argument—for the purposes of this motion—fails for much the same reason as the arguments asserting jurisdiction over Solowsky and Pertnoy. Plaintiffs have failed to allege specific tortious acts perpetrated by Reizen against either Plaintiff occurring after Bocciolone moved to Colorado. Moreover, even if Plaintiffs had alleged sufficient facts, they fail to meet the second requirement of 18 U.S.C. § 1965(b) that service of process on "other parties" residing outside the forum state only be allowed when necessary to further the ends of justice.

By requiring the "ends of justice" be satisfied, Congress expressed a preference that defendants not be unnecessarily haled into unexpected forums. *Cory*, *supra*, 468 F.3d at 1230 (citing *PT United Can*, *supra*, 138 F.3d at 72). The purpose of § 1965(b) is to ensure at least one court has jurisdiction over everyone connected with any RICO enterprise. *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 672 (7th Cir. 1987). Where another forum—such as the Southern District of Florida here—has jurisdiction over everyone connected with an alleged RICO conspiracy, the ends of justice usually do not require defendants to be haled into a forum with which they otherwise have no contacts. *Id*.

The "'ends of justice' is a flexible concept uniquely tailored to the facts of each case." *See Cory*, *supra*, 468 F.3d at 1232. While "the 'ends of justice' analysis is not controlled by the fact that all defendants may be amenable to suit in one forum," I find it informative here where the underlying claims and defenses in the ongoing Southern District of Florida case rely on the same set of facts and transactions. *See id*. Indeed, Plaintiffs' claims here seek to litigate the same issues already being pursued by Sitindustrie in the Southern District of Florida. If Defendants

9

were haled into this Court, they would be forced to defend themselves in a nearly identical action pursued on behalf of the same ultimate plaintiff: the Bocciolone family and the Sitindustrie subsidiaries.

Even if personal jurisdiction over Reizen is appropriate, therefore, the ends of justice are not be furthered by haling Solowsky and Pertnoy into this Court under 18 U.S.C. § 1965(b). As Plaintiffs do not meet their burden of showing RICO authorizes the service of process on Defendants Solowsky and Pertnoy, I need not inquire whether the exercise of jurisdiction in this case comports with due process. *See Cory*, *supra*, 468 F.3d at 1233.

### IV. CONCLUSION

Accordingly, for the reasons set forth above, I GRANT Defendants Jay H. Solowsky and Pertnoy, Solowsky & Allen, P.A.'s Motion to Dismiss for Lack of Personal Jurisdiction [**Docket # 13**] and DISMISS WITHOUT PREJUDICE as to these two Defendants.


Dated: December   20  , 2007.

                                          BY THE COURT:

                                            s/Lewis T. Babcock
                                          Lewis T. Babcock, Judge